UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JASON BOYD,

                Plaintiff,

    -against-

THE CITY OF NEW YORK,
FERNANDO SANTOS, and
JOHN DOES 1 - 3,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

      Plaintiff Jason Boyd, by his attorneys, Reibman & Weiner, as and for his Complaint, hereby alleges as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

      1.     At all times hereinafter mentioned plaintiff Jason Boyd was an adult male resident of Westchester County, in the State of New York.

      2.     At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

      3.     Upon information and belief, defendant Fernando Santos, whose Tax ID is 942515, was at all relevant times herein employed by the City of New York as a member of the NYPD. Santos is being sued in both her official and individual capacities.

      4.     Upon information and belief, defendants John Doe 1, 2, and 3, were at

at all relevant times employees of the NYPD. The Doe defendants' identities are not presently known to plaintiff. The Doe defendants are being sued in both their official and individual capacities.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

6. Venue is properly laid, pursuant to 28 U.S.C. § 1391, et seq. in the Southern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

### RELEVANT FACTS

7. On July 22, 2010 at or around 9:00 to 10:00 P.M., plaintiff and a friend were driving in the Bronx, New York.

8. As plaintiff and his friend were traveling on Bruckner Boulevard, they were pulled over by the defendants.

9. The defendants approached the plaintiff's vehicle and ordered plaintiff and his friend out of the car.

10. Santos and the three Doe defendants were all wearing NYPD uniforms and traveling in what appeared to be NYPD vehicles.

11. One of the Doe defendants was wearing a uniform that included a white shirt. Santos and the other two Doe defendants were wearing uniforms with blue shirts.

12. Only members of the NYPD with a rank of Lieutenant or higher are

allowed to wear white shirts as part of their NYPD uniform.

13. Upon information and belief, Santos and the other two Doe defendants were under the supervision of the white shirted Doe defendant at all times during their encounter on July 22, 2010.

14. Santos approached, searched, and then handcuffed plaintiff.

15. Plaintiff's friend was also handcuffed.

16. Plaintiff complained to Santos and the other defendants that the handcuffs were excessively tight and asked that they be loosened.

17. The defendants told plaintiff to shut up and refused to loosen or otherwise adjust his handcuffs.

18. Plaintiff was brought to a local area NYPD station house, where he was detained against his will for a period of time. While at the precinct the defendants left plaintiff in the overly tight handcuffs for a lengthy period of time.

19. When plaintiff continued to request that the cuffs be loosened, the individual defendants, including the three Doe defendants, threatened him with a taser.

20. Plaintiff was later recuffed to be transferred to another precinct station house.

21. The defendants, who had originally over tightened the handcuffs on plaintiff and then refused to loosen them, again made the handcuffs overly tight, causing plaintiff significant pain.

22. Plaintiff was kept in the overly tight handcuffs after his arrival at the

second station house.  After a period of at least one to two hours, if not more, plaintiff was taken back to the first station house.

23. The defendants' use of overly tight handcuffs, and their refusal to loosen them or otherwise modify their behavior after plaintiff alerted them to the pain the cuffs were causing, was unwarranted, unjustifiable, and unreasonable.

24. As a result of defendants' use of overly tight handcuffs, plaintiff suffered an upper right and left extremity peripheral neuropathy, including radial nerve injuries.

25. Eventually, plaintiff was transported to Bronx Central Booking, where he was further detained against his will.

26. Defendant Santos was the arresting officer responsible for prosecuting plaintiff's arrest.

27. While plaintiff was in defendants' custody, the defendants created or caused the creation of paperwork memorializing false factual allegations alleging that plaintiff had violated New York's Vehicle and Traffic Law §§ 509 and 511.

28. The defendants made or brought about these false allegations with the understanding that the false allegations would be transmitted to the Bronx County District Attorney ("BCDA") so that the BCDA would commence the criminal prosecution of the plaintiff.

29. The false allegations were then, in fact, transmitted or otherwise communicated to the BCDA.

4

30.     However, the BCDA declined to prosecute the plaintiff on any charges.

31.     Plaintiff was held in defendants' custody for a period of many hours as a result of his arrest by the defendants on July 22, 2010, before he was summarily released after the BCDA declined his prosecution.

32.     Plaintiff was conscious of his detention at all times.

33.     At no time did defendants have sufficient cause to arrest or otherwise detain or imprison plaintiff, nor did they have a reasonable basis to believe such cause existed.

34.     At no time did any defendant take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the other defendants against Mr. Boyd, including the false arrest, unlawful detention, and use of excessive force.

35.     The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

36.     That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

37. Plaintiff repeats the allegations contained in paragraphs "1" through "36" above as though stated fully herein.

38. Defendants willfully and intentionally seized, searched, arrested, and detained plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

39. Defendants willfully and intentionally subjected plaintiff to physical force in excess of what was reasonable under the circumstances and caused plaintiff to suffer physical injuries, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful or necessary.

40. By so doing, the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, excessive force, unlawful searches of person and property, and denial of due process, and thereby violated plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

41. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

42. Plaintiff repeats the allegations contained in paragraphs "1" through "41" above as though stated fully herein.

43. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD and its members.

44. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD.

45. The municipal defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

46. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol

Guide, up to and beyond the plaintiff's arrest.

47. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

48. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

   a. Using excessive force on individuals, including but not limited to those who have already been handcuffed;

   b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

   c. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

   d. Retaliating against officers who report police misconduct; and

   e. Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

49. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the many civil actions filed in the Eastern and Southern Districts of New York, as well as in New York State Supreme Court throughout the five boroughs of the City of New York.

43. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

44. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

45. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

46. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

i. on the first cause of action, actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii. on the second cause of action, actual damages against the municipal defendant in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

iv. such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
May 22, 2013

                                  REIBMAN & WEINER

By: _____
     Michael B. Lumer (ML-1947)
     Attorneys for Plaintiff
     26 Court Street, Suite 1808
     Brooklyn, New York 11242
     (718) 522-1743